**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

RICHARD A. BRANDT,
                            Plaintiff,

   v.                                    No. 05-CV-721
                                                (LEK/DRH)

MICHAEL J. ASTRUE,[1] Commissioner of
Social Security,
                            Defendant.

---

**APPEARANCES:**                               **OF COUNSEL:**

CONBOY, McKAY, BACHMAN &          LAWRENCE D. HASSELER, ESQ.
   KENDALL, LLP                          PETER L. WALTON, ESQ.
Attorney for Plaintiff
407 Sherman Street
Watertown, New York 13601

HON. GLENN T. SUDDABY              WILLIAM H. PEASE, ESQ.
United States Attorney for the        Assistant United States Attorney
   Northern District of New York
Attorney for Defendant
100 South Clinton Street
Syracuse, New York 13261-7198

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[2]

      Plaintiff Richard A. Brandt ("Brandt") brought this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security ("Commissioner") denying his application for benefits under the Social Security Act. Brandt

---

    [1] Michael J. Astrue is the current Commissioner of Social Security. He shall be substituted as the named defendant pursuant to Fed. R. Civ. P. 25(d)(1).

    [2] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

moves for a finding of disability and the Commissioner cross-moves for a judgment on the pleadings. Docket Nos. 7, 9. For the reasons which follow, it is recommended that the Commissioner's decision be remanded for further proceedings.

## I. Procedural History

On June 23, 2003, Brandt filed an application for supplemental security income ("SSI") pursuant to the Social Security Act, 42 U.S.C. § 401 <u>et seq.</u> T. 42, 49-51.[3] On December 17, 2003, the application was denied. T. 32-34. Brandt requested a hearing before an administrative law judge ("ALJ"), which was held before ALJ James D. Kemper, Jr. on July 20, 2004. T. 36, 160-97. In a decision dated October 4, 2004, the ALJ held that Brandt was not entitled to disability benefits. T. 13-21. On December 1, 2004, Brandt filed a request for review with the Appeals Council. T. 10-12. The Appeals Council denied Brandt's request for review on April 14, 2005, thus making the ALJ's findings the final decision of the Commissioner. T. 4-6. This action followed.

## II. Contentions

Brandt contends that the ALJ erred when he failed to develop the record fully, failed to assess properly the severity of his impairments, and failed to credit properly his subjective complaints of pain. Brandt also contends that substantial evidence does not support the ALJ's finding that Brandt could perform medium work and return to his past relevant work. Brandt further contends that the ALJ erred by failing to find that the Medical-

---

[3] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. Docket No. 6.

Vocational Guidelines directed a finding of disability.  The Commissioner contends that there was substantial evidence to support the determination that Brandt was not disabled.

### III.  Facts

Brandt, now sixty-one years old, worked as a self-employed carpenter.  T. 170-71.  He previously worked as a maintenance coordinator and laborer.  T. 172-74.  Brandt completed high school and trained at a police academy.  T. 59, 169.  Brandt alleges that he became disabled on August 1, 2002 due to the condition of his back, knees, shoulders, left arm, and hands.  T. 49, 53.  Brandt also alleges that he suffers from high blood pressure, diabetes, and high cholesterol.  T. 55, 58.

### IV.  Standard of Review

#### A.  Disability Criteria

A claimant seeking disability benefits must establish that "he [or she] is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A) (2003).  In addition, the claimant's impairments must be of such severity that he or she is not able to do previous work or any other substantial gainful work considering the claimant's age, education, and work experience, regardless of whether such work exists in the immediate area, whether a specific job vacancy exists, or whether the claimant would be hired if he or she applied for work.  42 U.S.C. § 1382c(a)(3)(B) (2003).

The Commissioner uses a five-step process, set forth in 20 C.F.R. § 416.920, to evaluate SSI disability claims:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he [or she] is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his [or her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work. Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); see 20 C.F.R. § 416.920 (2007).

The plaintiff has the burden of establishing disability at the first four steps. Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 2000). However, if the plaintiff establishes that an impairment prevents him or her from performing past work, the burden then shifts to the Commissioner to determine if there is other work which the claimant could perform. Id.

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw, 221 F.3d at 131 (citations omitted). It must be "more than a mere

4

scintilla" of evidence scattered throughout the administrative record.  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000).

"In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision."  Prentice v. Apfel, No. 96 Civ. 851(RSP), 1998 WL 166849, at *3 (N.D.N.Y. Apr. 8, 1998) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)).  A court, however, cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998).  If the Commissioner's finding is supported by substantial evidence, it is conclusive.  Bush v. Shalala, 94 F.3d 40, 45 (2d Cir. 1996).

## V.  Discussion

### A.  Medical Evidence

Brandt alleges that he became disabled on August 1, 2002 due to the condition of his back, knees, shoulders, left arm, and hands.  T. 49, 53.  Brandt also alleges that he suffers from high blood pressure, diabetes, and high cholesterol.  T. 55.

From September 1999 to October 2004, Brandt treated for hypertension, diabetes, hyperlipidemia,[4] low back pain, and arthritis with Dr. Nancy Girard and Peter Hummer, a registered physician's assistant.  T. 120-29, 157-60.  Brandt was treated with various medications.  Id.

---

[4] "The presence of high levels or concentrations of lipids (fats) in the blood."  Attorneys' Dictionary of Medicine at 5581 (39th ed. 2005).

5

X-rays of various areas taken on December 30, 1999 showed "mild sclerosis along the iliac aspect of the left [sacroiliac] joint;" "[d]egenerative disk changes in the lower thoracic spine and facet arthritis in the lower lumbar spine," and "[v]ery minimal degenerative changes in the knees." T. 98-100. The x-rays also showed preserved carpal joint spaces, normal bilateral wrists, "negative bilateral hands for erosions, fracture, or spurring," and "[n]o significant degenerative changes" in the hips. T. 96, 101-02.

On September 22, 2003, Brandt underwent a consultative examination with Dr. Mirza M. Ashraf. T. 116-17. Dr. Ashraf noted "marked tenderness" in Brandt's lower lumbosacral spine, "slightly diminished" leg reflexes, and some restricted movement of the shoulder joints. T. 117. Dr. Ashraf concluded that Brandt suffered from low backache possibly due to a slipped disc lumbosacral spine, tendonitis and bursitis in both shoulders, arthritis in both knees, and possible carpal tunnel syndrome in both hands. Id.

On November 13, 2003, Brandt underwent a consultative examination with Dr. Gerald R. Amatucci. T. 130-33. Dr. Amatucci noted that upon questioning, Brandt stated that he was currently "building a pole barn." T. 130-31. Dr. Amatucci found "no significant findings of arthritis" and that Brandt "had excellent range of motion and strength." T. 133. He further found "little to no significant decreased ability to perform tasks related to the work place." Id.

An x-ray of Brandt's lumbosacral spine taken on November 26, 2003 showed "[d]egenerative changes and degenerative disc disease" which "progressed somewhat from [the December 30, 1999] exam." T. 134. An x-ray of Brandt's knee showed "no fracture or osseaous lesion" but a "tiny marginal osteophyte . . . arising from the articular surface of the superior pole of the patella." T. 135.

The record also contains a physical residual functional capacity (RFC) assessment completed by a non-physician disability examiner, "K. Doane," on December 11, 2003, which indicated that Brandt could lift and carry fifty pounds occasionally; lift and carry twenty-five pounds frequently; and stand and walk, or sit, for about six hours in an eight-hour workday.  T. 137-142.

### B.  Development of the Record

Brandt contends that the ALJ failed to develop the record fully with regard to the opinion of his treating physician, Dr. Girard.  Docket No. 7 at 6.  The Commissioner contends that the record was developed adequately.  Docket No. 9 at 13-14.

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996) (citing Echevarria v. Sec'y of HHS, 685 F.2d 751, 755 (2d Cir. 1982)).  This duty is heightened when a claimant appears pro se.  See Devora v. Barnhart, 205 F. Supp. 2d 164, 172 (S.D.N.Y. 2002) (citing Cullinane v. Sec'y of HHS, 728 F.2d 137, 139 (2d Cir. 1984) (finding that remand for new hearing was appropriate where ALJ failed to assist pro se litigant in securing all relevant medical testimony)).

The regulations describe this duty by stating that, "[b]efore we make a determination that you are not disabled, we will develop your complete medical history . . . [and] will make every reasonable effort to help you get medical reports from your own medical sources . . . ." 20 C.F.R. §§ 404.1512(d), 416.912(d) (2007).  The duty of an ALJ to develop the record is "particularly important" when obtaining information from a claimant's treating physician

7

due to the "treating physician" provisions in the regulations.[5]  Devora, 205 F. Supp. 2d at 172.  The regulations thus provide that, "[w]hen the evidence we receive from your treating physician . . . is inadequate for us to determine whether you are disabled, . . . [w]e will first recontact your treating physician . . . to determine whether the additional information we need is readily available."  20 C.F.R. §§ 404.1512(e), 416.912(e).

Here, the ALJ had a heightened duty to develop the administrative record because Brandt appeared pro se prior to the issuance of the ALJ's decision.  T. 162-63.  Brandt contends that the ALJ did not fulfill this duty because he made no attempt to obtain Dr. Girard's opinion regarding Brandt's condition.  Docket No. 7 at 6.  "There is ample case law suggesting that an ALJ has an independent duty to make reasonable efforts to obtain a report prepared by a claimant's treating physician in order to afford the claimant a full and fair hearing."  Devora, 205 F. Supp. 2d at 174 (citing, inter alia, Peed v. Sullivan, 778 F. Supp. 1241, 1246 (E.D.N.Y. 1991) ("[W]hen the claimant appears pro se, the combined force of the treating physician rule and of the duty to conduct a searching review requires that the ALJ make every reasonable effort to obtain not merely the medical records of the treating physician but also a report that sets forth the opinion of that treating physician as to the existence, the nature, and the severity of the claimed disability.")).

In this case, Dr. Girard provided medical treatment and had an ongoing treatment relationship with Brandt; thus, Dr. Girard was a treating source.  See T. 120-29, 157-60; 20 C.F.R. §§ 404.1502, 416.902 (2007) ("Treating source" is defined as one's own physician,

---

[5] Under the regulations, a treating source's opinion is entitled to controlling weight if well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the record.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2007).

8

psychologist, or other acceptable medical source who provides, or has provided, medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with the patient/plaintiff/claimant). Therefore the ALJ had an independent duty to obtain a report by Dr. Girard as to the existence, nature, and severity of Brandt's condition. However, the record contains no such report. Moreover, nothing clearly indicates that the ALJ attempted to obtain such a report.

While the ALJ might have been able to discharge his obligation if he clearly directed Brandt to obtain a more detailed statement from Dr. Girard, see Devora, 205 F. Supp. 2d at 175 (quoting Cruz v. Sullivan, 912 F.2d 8, 12 (2d Cir. 1990)), the ALJ did not do so in this case. Instead, the ALJ simply told Brandt, "If you feel there's some additional evidence that you have, some treatment notes, something you'd like to send me after the hearing, you can do that . . . [a]nd I'll consider those as well." T. 168. It appears that Brandt interpreted the ALJ's statement as a request for any existing evidence in Brandt's possession, as Brandt replied, "I really don't have anything else to send you because I, I can't afford to go to doctors." T. 168. The ALJ also did not discharge this duty by asking Brandt if he had "anything additional that . . . you think should be in [the file]." T. 166. Brandt stated that he had not reviewed his file and nothing establishes that Brandt knew what evidence "should be" in his file. See T. 163.

Accordingly, the ALJ did not fulfill his duty to develop a complete record. There is no report from Dr. Girard as to the existence, nature, and severity of Brandt's condition and no indication that the ALJ sought such a report. Therefore, it is recommended that the matter be remanded for a more complete development of the record.

9

### C. Severity

Brandt contends that the ALJ erred by failing to assess properly the severity of his hypertension, shoulder pain, and "hand pain and carpal tunnel symptoms." Docket No. 7 at 7-8. Defendant contends that the ALJ properly found that these conditions were not severe impairments. Docket No. 9 at 14-16.

As mentioned above, step two of the sequential evaluation process requires a determination as to whether the claimant has a severe impairment which significantly limits the physical or mental ability to do basic work activities. See Part IV(A) supra. The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b) (2007). Basic work activities which are relevant for evaluating the severity of a physical impairment include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling. Id.; see Pickering v. Chater, 951 F. Supp. 418, 424 (S.D.N.Y.1996).

An impairment is severe if it significantly limits physical or mental abilities to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c) (2007). Age, education, and work experience are not evaluated in determining if the impairment or combination of impairments are severe. Id. The severity analysis does no more than "screen out de minimis claims." Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995). If the disability claim rises above the de minimis level, then further analysis is warranted. Id. Where a claimant alleges multiple impairments, the combined effects of all impairments must be considered, regardless of whether any impairment, if considered separately, would be of sufficient severity. The next inquiry is whether a claimant retained the RFC to perform his or her past work. This inquiry must consider the combined effect of any impairments, whether or not

they are severe, through the remaining steps. 20 C.F.R. §§ 404.1523, 416.923 (2007); Dixon, 54 F.3d at 1031.

Here, the ALJ found that Brandt had severe impairments of degenerative disc disease of the lumbar spine and chronic knee pain but that these impairments did not meet or equal a listed impairment. T. 18. Brandt contends that the ALJ erred by failing to find that his hypertension, shoulder pain, and hand pain and carpal tunnel symptoms were severe impairments. Docket No. 7 at 7-8.

Regarding Brandt's hypertension, Brandt points to "Dr. Girard's medical notes" and his hearing testimony. However, it is not sufficient for a claimant to establish the mere presence of a disease or impairment; instead, the claimant must show that the disease or impairment caused functional limitations that preclude him from engaging in any substantial gainful activity. See Rivera v. Harris, 623 F.2d 212, 215-16 (2d Cir. 1980). Here, the present record does not contain substantial evidence establishing that this condition caused functional limitations that precluded him from engaging in any substantial gainful activity. Thus, the ALJ properly found that Brandt's hypertension was not a severe impairment.

Regarding Brandt's shoulder pain, the ALJ found that Brandt's shoulder pain was not a severe impairment. T. 18. The record reveals that Brandt complained of shoulder pain to Dr. Girard and that Dr. Ashraf diagnosed Brandt as suffering from tendonitis and bursitis in both shoulders. T. 117, 129. However, Dr. Amatucci noted "normal range of motion of his shoulders. No areas of tenderness, erythema, edema, warmth or deformity. He moved his arms slowly stating that they would lock as he came back down. This clearly was not evident in watching his motions." T. 132. Dr. Amatucci also noted "no significant findings of arthritis. . . . He had excellent range of motion and strength. There were objective findings

consistent with little to no significant decreased ability to perform tasks related to the work place." T. 132-33. Dr. Amatucci also noted that Brandt claimed that "the pain from his arthritis keeps him from being able to work as a carpenter. I asked the patient what he is doing at the present time and he said he was building a pole barn." T. 130-31.

Moreover, while Brandt testified at the July 2004 hearing that his shoulders were "very painful" and locked, and that he was unable to sleep on his left shoulder, he also stated, "Shoulders, I could live with it if I didn't have the other stuff." T. 183. He also stated that his daily activities included "working maybe an hour and a half or so painting the house." T. 188. He further stated that he last worked in January 2004 building a pole barn but had not worked since then due to, inter alia, a lack of work. T. 171.

Accordingly, the present record does not contain substantial evidence demonstrating that Brandt's shoulder pain caused functional limitations that precluded him from engaging in any substantial gainful activity. Moreover, pain, in and of itself, is not a limitation but rather a symptom which can be associated with limiting RFC factors. 20 C.F.R. §§ 404.1529(a), 416.929(a) (2007) ("In determining whether you are disabled, we consider all your symptoms, including pain. . . ."); Social Security Ruling ("S.S.R.") 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996) ("[S]ymptoms, including pain, are not intrinsically exertional or nonexertional. It is the functional limitations or restrictions caused by medical impairments and their related symptoms that are categorized as exertional or nonexertional"). In light of the foregoing, the ALJ properly found that Brandt's shoulder pain was not a severe impairment.

Regarding Brandt's hand pain and carpal tunnel symptoms, the ALJ found that Brandt did not have a severe impairment regarding these complaints. T. 18. While Dr.

Ashraf opined that Brandt had possible carpal tunnel syndrome in both hands, Dr. Ashraf noted no supporting evidence. T. 117. Also a progress note from Hummer noted that Brandt complained of "worsening . . . carpal tunnel symptoms" and that Brandt "tends to drop[] plates/glasses," but Hummer simply noted Brandt's subjective complaints. T. 124. Moreover, Dr. Amatucci found "normal range of motion of [Brandt's] wrists and hands. No arthritic deformity of any kind. No areas of tenderness, erythema, edema, or warmth. He had normal grip strength bilaterally. Negative Tinel's test." T. 132.

At the hearing, Brandt testified that grasping objects "has now become a huge problem," but he later testified that his daily activities included "maybe an hour and a half or so painting the house." T. 188. He also stated that while doing carpentry and construction work, he "do[es] all the . . . cutting of the two by fours, sizing, cut rafters, cut the siding, that kind of stuff." T. 191. Moreover, in a questionnaire dated September 2, 2003, Brandt indicated that his hobbies included watercolor painting. T. 78.

The present record does not provide substantial evidence demonstrating that Brandt's "hand pain and carpal tunnel symptoms" caused functional limitations that precluded him from engaging in any substantial gainful activity. Moreover, as noted, pain, in and of itself, is not a limitation but rather a symptom which can be associated with limiting RFC factors. See 20 C.F.R. §§ 404.1529(a), 416.929(a); S.S.R. 96-8p, 1996 WL 374184, at * 1. In light of the foregoing, the ALJ properly found that Brandt's "hand pain and carpal tunnel symptoms" were not severe impairments. Accordingly, it is recommended that the Commissioner's findings in this regard be affirmed.

### D.  Credibility

Brandt contends that the ALJ failed to assess properly his credibility.  Docket No. 7 at 13-14.  The Commissioner contends that the ALJ properly considered Brandt's credibility.  Docket No. 9 at 20-22.

The basis for establishing disability includes subjective complaints of pain, even where the pain is unsupported by clinical or medical findings, provided that the underlying impairment can be "medically ascertained."  20 C.F.R. §§ 404.1529, 416.929; see also Snell v. Apfel, 177 F.3d 128, 135 (2d Cir. 1999).  A finding that a claimant suffered from disabling pain requires medical evidence of a condition that could reasonably produce such pain.  An ALJ must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be expected to be consistent with the medical and other evidence.  20 C.F.R. §§ 404.1529, 416.929; Martone v. Apfel, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999).  Pain is a subjective concept "difficult to prove, yet equally difficult to disprove" and courts should be reluctant to constrain the Commissioner's ability to evaluate pain.  Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir. 1983).  If there is a rejection of the claims of disabling pain, the ALJ must provide specific reasons for doing so.  Saviano v. Chater, 956 F. Supp. 1061, 1071 (E.D.N.Y. 1997).

The claimant's credibility and motivation, as well as the medical evidence of impairment, are used to evaluate the true extent of the alleged pain and the degree to which it hampers the applicant's ability to engage in substantial gainful employment.  See Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1978); Lewis v. Apfel, 62 F. Supp. 2d 648, 653 (N.D.N.Y. 1999).  If there is conflicting evidence about a claimant's pain where the degree of pain complained of is not consistent with the impairment, the ALJ must make credibility

findings. Donato v. Sec'y of HHS, 721 F.2d 414, 418-19 (2d Cir. 1983). The ALJ must consider several factors pursuant to 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3):

> (i) [The claimant's] daily activities;
>
> (ii) The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate . . . pain or other symptoms;
>
> (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of . . . pain or other symptoms;
>
> (vi) Any measures [the claimant] use[s] or ha[s] used to relieve . . . pain or other symptoms (e.g., lying flat on [his] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

Here, the ALJ noted that he "was able to observe the claimant while he testified, his demeanor, the way he answered the questions, and all of the other factors that go into assessing a witness' credibility. Considering these factors, I find [Brandt's] credibility as a witness to be poor and his demeanor during the hearing consistent with the limitations established in his residual functional capacity." T. 19. While an ALJ may consider a claimant's physical demeanor at a hearing, such observations should be assigned only limited weight. Schaal v. Apfel, 134 F.3d 496, 502 (2d Cir. 1998). Here, the ALJ did not state what weight he assigned to Brandt's demeanor.

The ALJ also failed to discuss fully certain other factors affecting Brandt's credibility. For example, the ALJ never addressed the location of Brandt's symptoms. At the hearing,

15

Brandt testified that his hands "swell at times." T. 182. However the ALJ failed to discuss this symptom. The ALJ also failed to discuss fully the precipitating and aggravating factors of Brandt's pain. Brandt repeatedly stated that he experienced difficulty bending over. T. 179, 189-90. The regulations provide that a "limited ability to perform . . . postural functions, such as reaching, handling, stooping, or crouching . . . may reduce your ability to do past work and other work." 20 C.F.R. §§ 404.1545(b), 416.945(b) (2007). However, the ALJ did not discuss this aggravating factor.

Further, the ALJ based his credibility determination in part on a lack of "findings indicative of carpal tunnel syndrome." T. 19. However, Dr. Ashraf diagnosed Brandt as suffering from "Possible Carpal Tunnel Syndrome, Both Hands." T. 117. Thus, the ALJ was incorrect in his assertion that there was a lack of findings indicative of carpal tunnel syndrome.

Finally, the ALJ noted that Brandt "has received minimal conservative treatment for his complaints and the objective medical findings have been mild." T. 19. However, the ALJ failed to discuss the possibility that Brandt may have been unable to afford treatment. An ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations . . . that may explain infrequent or irregular medical visits or failure to seek medical treatment." S.S.R. 96-7p, 1996 WL 374186, at *7 (S.S.A. July 2, 1996). Such explanations may include that "[t]he individual may be unable to afford treatment and may not have access to free or low-cost medical services." Id. at *8.

Here, Brandt stated, "I can't afford to go to doctors. I can't even afford to go to [Dr.] Gerard [sic] for the high blood pressure and diabetes." T. 168. He later stated, "I'm also

16

supposed to be taking medication for my triglycerides that are very, very, very high, but I can't afford it, so I don't take it. I'm also supposed to be checking my sugar levels twice a day, but I can't afford the strips, so I don't do it." T. 186. In a Disability Report dated August 5, 2003, Brandt also noted that he was "thousands in debt" and unable to afford certain medications. T. 58, 60. Additionally, the progress notes from Hummer contain many references to Brandt's financial situation. See T. 120, 122-23, 125, 157-58. Thus, the ALJ erred by failing to discuss the possibility that Brandt may have been unable to afford treatment.

In light of the foregoing, the ALJ's determination as to Brandt's credibility is not supported by substantial evidence. Accordingly, remand is also recommend for a proper evaluation of Brandt's credibility.

### E.  Residual Functional Capacity

Brandt contends that the ALJ's RFC determination is not supported by substantial evidence. Docket No. 7 at 8-11. Defendant contends that the RFC determination is supported by substantial evidence. Docket No. 9 at 16-20.

RFC describes what a claimant is capable of doing despite his or her impairments considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations which go beyond the symptoms. Martone, 70 F. Supp. 2d at 150; see 20 C.F.R. §§ 404.1545, 416.945. "RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations." Smith v. Apfel, 69 F. Supp. 2d 370, 378 (N.D.N.Y. 1999) (citation omitted). In assessing RFC, the ALJ must make findings specifying what functions the claimant is capable of performing; conclusory

statements regarding a claimant's capabilities are insufficient.  Martone, 70 F. Supp. 2d at 150.  "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."  S.S.R. 96-8p, at *7 (S.S.A.1996).  RFC is then used to determine whether the claimant can perform his or her past relevant work in the national economy.  New York v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); see 20 C.F.R. §§ 404.1560, 416.960 (2007).

In determining Brandt's RFC, the ALJ discussed various findings set forth in the medical evidence and Brandt's demeanor as a witness.  T. 19.  The ALJ then concluded that Brandt "retained the [RFC] to perform a full range of medium work."[6]  Id.  However, this conclusory statement as to Brandt's abilities was insufficient.  See Martone, 70 F. Supp. 2d at 150; Lecler v. Barnhart, No. 01 Civ. 8659, 2002 WL 31548600, at *5 (S.D.N.Y. Nov. 14, 2002) (finding that the "ALJ's conclusory statement that plaintiff has the capability to perform medium work" was insufficient).  Moreover, the ALJ failed to demonstrate through medical evidence whether and to what extent Brandt was capable of performing each of the elements of medium work.  It is noted that the only evidence in the record that spoke directly to Brandt's exertional capabilities was the RFC assessment completed by K. Doane, a non-physician disability examiner.  See T. 31, 137-42.

Accordingly, because the ALJ provided only a conclusory statement regarding Brandt's capabilities and failed to demonstrate through medical evidence whether and to

---

[6] By regulation, medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 416.967(c)(2007).

what extent Brandt was capable of performing each of the elements of medium work, the RFC determination is not supported by substantial evidence. Therefore, remand is also recommended for a re-evaluation of Brandt's RFC.[7]

### VI. Remand or Reversal

A reviewing court has the authority to reverse with or without remand. 42 U.S.C. §§ 405(g), 1383(c)(3) (2003). Remand is appropriate where there are gaps in the record or further development of the evidence is needed. Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000). Reversal is appropriate, however, where there is "persuasive proof of disability" in the record and remand for further evidentiary development would not serve any purpose. Id.; see also Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980). Here, the record is unclear regarding the issues discussed above. Accordingly, it is recommended that the decision of the Commissioner be remanded for further proceedings rather than reversed.

---

[7] As to Brandt's remaining contentions, because remand is recommended for, inter alia, a re-evaluation of Brandt's RFC, it follows that remand to determine whether Brandt could perform his past relevant work is also necessary as a claimant's RFC and past relevant work are considered at step four of the sequential evaluation. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv) (2007). If the ALJ finds that Brandt cannot perform his past relevant work at step four, the regulations provide that "[a]t the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work." 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v) (2007). The ALJ then may apply the Medical-Vocational Guidelines or consult a vocational expert. See Heckler v. Campbell, 461 U.S. 458, 462 (1983); Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999); 20 C.F.R. pt. 404, subpt. P, App. 2 (2007).

## VII.  Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that the decision denying disability benefits be **REMANDED** for further development of the record.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85 (2d Cir. 1993) (citing Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

DATED:     October 26, 2007
           Albany, New York                        _____
                                                   David R. Homer
                                                   United States Magistrate Judge